UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **TED L. KUBALA, JR.,** *et al.*, ] | CASE NO. 2:15-cv-00116 |
| ] | |
| *Plaintiffs*, ] | |
| ] | |
| v. ] | COLLECTIVE ACTION |
| ] | |
| **SUPREME PRODUCTION SERVICES, INC.** ] | |
| ] | |
| *Defendant.* ] | |
| ] | |

### KUBALA'S RESPONSE TO SUPREME'S
### MOTION TO DISMISS FOR LACK OF JURISDICTION

**1.    SUMMARY.**

Supreme Production Services, Inc. argues its **unsuccessful** attempt to force Ted Kubala to sign an arbitration agreement - **after** he filed this Fair Labor Standards Act (FLSA) collective action – divests this Court of jurisdiction. Supreme is wrong. Because Kubala never agreed to Supreme's post-lawsuit arbitration policy and questions exist as to whether this case is even covered by that policy, Supreme's motion should be denied.

**2.    FACTS AND PROCEDURAL HISTORY.**

Kubala filed this FLSA collective action on March 9, 2015. ECF No. 1. According to Supreme, Kubala was presented with Supreme's new arbitration policy (the New Policy) just 2 days later. ECF No. 11, at 2. The New Policy purports to require arbitration of disputes between Supreme and its employees. *Id.* Kubala refused to be bound by these new terms and refused to sign the agreement. *Id.* at 3.

The New Policy, by its own terms, only encompasses conflicts of which Supreme learned of **after** the policy went into effect. ECF No. 11, at Exhibit A-1, at 4. Kubala filed this lawsuit on

March 9, 2015 (ECF No. 1) and Supreme argues the New Policy went into effect on March 11, 2015. ECF No. 11, at 4. So, hoping to avoid the terms of its New Policy, Supreme alleges it did not have actual notice of the lawsuit until after March 11, 2015. *Id.* Thus, factual disputes regarding when Supreme received actual notice of the instant lawsuit must be resolved before a determination on arbitration can be made.

3.   **SUPREME'S NEW POLICY IS NOT A VALID ARBITRATION AGREEMENT.**

While there is a federal policy favoring arbitration, this policy "**does not apply** to the determination of whether there is a valid agreement to arbitrate between the parties." *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073–74 (5th Cir. 2002). The issue of whether a valid arbitration agreement exists is governed by "ordinary contract principles." *Id.* "The party seeking arbitration has the initial burden to establish his right to the remedy under the contract; that is, to establish that a valid arbitration agreement exists." *Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App. 1998).[1] Supreme has not satisfied its burden, and therefore, its motion should be denied.

Basic contract law requires a "'meeting of the minds' between the parties in order for agreements to be valid." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (citing *Louisville & N.R. Co. v. Kentucky*, 161 U.S. 677, 692 (1896)). As discussed below, there was no meeting of the minds between Kubala and Supreme, and therefore, there is no valid agreement to arbitrate.

In its Motion, Supreme incorrectly asserts that Kubala's continued employment signified his assent to be bound by Supreme's New Policy. ECF No. 11, at 3–4, § 3.1. In support of this assertion, Supreme cites to a clause in the New Policy that *Kubala explicitly refused to sign. Id.* at fn. 14.

---

[1] Where the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the state governing the agreement. *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).

Texas contract law establishes that Supreme is wrong, holding that a "continual and unequivocal refusal to accept [a new] arbitration provision shows there was no meeting of the minds on the contractual provision." *Equity Residential Props. Mgmt. Corp. v. Silvers*, No. 05-97-01073-CV, 1998 WL 549289, at *4 (Tex. App. Aug. 31, 1998).

The holding in *Equity Residential Properties v. Silvers* presents a thorough discussion of when an employee may be bound by an employer's new arbitration provision. *Id.* In that case, Equity told Silvers that she had to agree to its new arbitration policy. *Id.* Silvers refused to sign the new policy, but was allowed to continue to work. *Id.* In light of her refusal to sign the arbitration policy, "Equity's Regional Vice President wrote Silvers a letter advising her that the company's policy on arbitration applied to her even if she did not sign the acknowledgement form." *Id.* Regardless of Equity's unilateral statements that Silvers would be bound by the new arbitration agreement whether she signed it or not, the Court held that Silvers' constant refusal to sign the agreement indicated that no meeting of the minds occurred. *Id.* Thus, the court found that there was no valid arbitration agreement. *Id.*

*Equity Residential Properties* is consistent with the facts at bar. Like Silvers, Kubala expressly refused to sign an arbitration agreement that was forced on him during the course of his employment. And like Supreme, Equity Residential Properties argued that their employee was bound by the arbitration agreement regardless of if they agreed to sign the new policy. *See* ECF No. 11, at 3–4, § 3.1. This Court should hold, consistent with the Texas Appellate Court in *Equity Residential Properties*, that Kubala's continued refusal to submit to a new arbitration agreement establishes that there was no meeting of the minds, and no contract was formed between Supreme and Kubala.

It is worth noting that Supreme cites to valid, but inapplicable, precedent holding that "An employee's continued employment with knowledge of a change in the at-will employment

relationship constitutes acceptance of the change as a matter of law." ECF No. 11, at 6–7. This is good law where the employee does not explicitly refuse to sign the agreement. But the *Equity Residential Properties* court expressly distinguished the general rule cited by Supreme. 1998 WL 549289, at *4. Thus, an employee consents to new policies if he continues to work without complaint, **but no contract can be formed where an employee unequivocally refuses to be bound by the new policy.** *Id.* Thus, Kubala's express refusal to sign the New Policy establishes no contract to arbitrate was ever formed between Supreme and Kubala.

4. **KUBALA IS ENTITLED TO SHOW THIS CONFLICT IS OUTSIDE SUPREME'S NEW POLICY.**

Even if Kubala and Supreme had agreed to arbitration (and they didn't), it must still be established that "the dispute in question falls within the scope of th[e] arbitration agreement." *Lemus v. CMH Homes, Inc.*, 798 F. Supp. 2d 853, 857 (S.D. Tex. 2011). Supreme admits its New Policy is inapplicable to events it "had actual notice of" prior to the purported adoption of the New Policy. ECF No. 11, at 4, § 3.2. As discussed below, significant questions exist as to whether actual notice of Kubala's complaints fall into this timeframe, and therefore, compelling arbitration at present is improper.

Again, Kubala filed this lawsuit on March 9, 2015 (ECF No. 1), two days **before** Supreme asserts it implemented its New Policy. ECF No. 11, at 4. Supreme argues Kubala should nonetheless be forced into arbitration because it claims it did not receive "actual notice" of Kubala's lawsuit until after it implemented its policy. Supreme's convenient argument should be viewed with skepticism.

With Kubala's right to a trial in federal court at stake, further factual investigation is warranted. Accordingly, Plaintiffs request the Court allow for limited discovery relating to when Supreme received actual notice of its conflict with Kubala before ruling on this issue (unless the Court finds that the New Policy was not a valid contract, as discussed above). *See Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, No. 8:11CV334, 2012 WL 762103, at *1 (D. Neb. Mar. 7, 2012)

("[T]he court will permit discovery limited to the issues of the existence of an arbitration agreement and the scope of any such agreement."); *Howard v. Ferrellgas Partners, L.P.*, No. 10-2555-JTM, 2012 WL 6104096, at *1 (D. Kan. Dec. 7, 2012) (discussing the court's prior grant of limited discovery to determine the scope of prior arbitration agreement); *R&F, LLC v. Brooke Corp.*, No. CIVA07-2175-JWL-DJW, 2007 WL 2809845, at *2 (D. Kan. Sept. 24, 2007) (discussing the court's prior art allowing limited discovery to determine whether parties agreed to arbitrate disagreement).

5. **QUESTIONS EXIST AS TO WHETHER THIS COURT SHOULD REFUSE TO ENFORCE SUPREME'S NEW ARBITRATION POLICY.**

In order to avoid "prejudice and impropriety" that may arise from *ex parte* communications to potential class members (including sending out arbitration agreements), "the district court has the discretion to 'facilitat[e] notice to potential plaintiffs' and 'broad authority' to exercise control over the collective action and to govern the conduct of counsel and parties in the collective action." *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 921 (11th Cir. 2014) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–71 (1989)). Under this broad discretion, courts have previously "refused to enforce arbitration agreements foisted on potential FLSA plaintiffs where the agreements were confusing, misleading, coercive, and clearly designed and implemented to unfairly thwart potential FLSA plaintiffs' ability to opt-in." *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2014 WL 6473236, at *7 (S.D. Fla. Nov. 18, 2014) (citing *Billingsley*, 560 F. App'x at 919, 922–24, *et al.*). Concerns of this nature may are raised in this case.

Given Supreme's near instantaneous adoption of the New Policy following the filing of this case, further investigation into the facts surrounding Supreme's attempt to force its employees into arbitration is warranted. Only through such discovery can the Court determine whether it needs to take remedial action (including refusing to enforce the New Policy). Accordingly, Plaintiffs request that the Court allow for limited discovery relating to Supreme's choice to institute the New Policy

and Supreme's implementation of the New Policy before ruling on this issue (unless the Court finds that the New Policy was not a valid contract, as discussed above).

**6.     CONCLUSION.**

For all of the foregoing reasons, Plaintiffs request that this Court deny Supreme's Motion to Dismiss for Lack of Jurisdiction, or in the alternative, allow Plaintiffs to engage in discovery before ruling on Supreme's Motion on: (1) when Supreme received actual notice of its conflict with Kubala, and (2) Supreme's choice to institute the New Policy and Supreme's implementation of the New Policy.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: __/s/ Rex Burch__
     Richard J. (Rex) Burch
     Fed. Id. 21615
     Texas Bar No. 24001807
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Michael A. Josephson
Fed. Id. 27157
State Bar No. 24014780
mjosephson@fibichlaw.com
Lindsay R. Itkin
Fed Id. 1458866
State Bar No. 24068647
litkin@fibichlaw.com
Andrew W. Dunlap
Fed Id. 1093163
State Bar No. 24078444
adunlap@fibichlaw.com
**FIBICH, LEEBRON, COPELAND, BRIGGS & JOSEPHSON**
1150 Bissonnet

>Houston, Texas 77005
>713-751-0025 – Telephone
>713-751-0030 – Facsimile
>
>**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I served this document via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

>**/s/ Rex Burch**
>_____
>Richard J. (Rex) Burch