UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TED L. KUBALA, JR., AND TRENTON SCHULZE, Individually and on behalf of all others similarly situated, PLAINTIFFS | § § § § § § § § § § | CIVIL ACTION NO. 2:15-cv-00116 |
| VS. | | |
| SUPREME PRODUCTION SERVICES, INC., DEFENDANT | | JURY TRIAL DEMANDED BY PLAINTIFF |

**REPLY OF DEFENDANT, SUPREME PRODUCTION SERVICES, INC., TO PLAINTIFF TED KUBALA, JR.'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS KUBALA FOR LACK OF JURISDICTION**

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Defendant, **SUPREME PRODUCTION SERVICES, INC.** ("Defendant") files this reply to *Kubala's Response to Supreme's Motion to Dismiss for Lack of Jurisdiction* (Doc. 16). Defendant filed its *Motion of Defendant, Supreme Production Services, Inc. to Dismiss Plaintiff, Ted L. Kubala, Jr., for Lack of Jurisdiction* (Doc. 11) seeking dismissal of all claims of Plaintiff, Ted L. Kubala, Jr. ("Kubala") set forth in the *First Amended Collective Action Complaint* (the "Complaint") (Doc. 10) for lack of jurisdiction pursuant to FRCP 12(b)(6), or in the alternative, an order compelling arbitration of Kubala's claims and stay of these proceedings pending an arbitral award or motion to dismiss of the parties:

## I. SUMMARY OF ARGUMENT

1.1     Defendant enacted a valid and enforceable Policy for Submission of Disputes to Final and Binding Arbitration and Waiver of Jury Trial, which wholly covers the subject matter of Kubala's FLSA allegations. Texas Supreme Court case law has established that, as a matter of law, an at-will employee who continues to work after the enactment of an arbitration policy is deemed to have accepted the arbitration policy, even if the employee expressly refuses to sign the agreement. Kubala has presented no evidence in opposition to Defendant's motion. Further, in his Response, Kubala admits he received notice of the Agreement and continued to work after receiving notice of the Agreement.[1] Kubala also does not dispute the Agreement, if accepted, is enforceable. The Texas Supreme Court has, on nearly identical facts, found such actions to constitute acceptance as a matter of law.

1.2     The parties agreed to arbitrate the questions of arbitrability and scope.[2] Kubala's arguments regarding the alleged fact question of whether Kubala's claims are within the scope of the Agreement is not a matter for the Court to decide. Kubala, who bears the burden in resisting arbitration, fails to offer any evidence to support his assertions that the Agreement was "instantaneously" enacted in response to his filing suit.

1.3     The party resisting arbitration bears the burden of proof. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002). Kubala has presented only argument, but no evidence to support his position. Kubala has failed to carry his burden of disproving that the Agreement is valid and covers the claims Kubala makes in his suit. Therefore, Defendant's motion should be granted.

---

[1] Kubala's Response (Doc. 16), pg. 4.
[2] Exh. A-1, Agreement, Sec. II, pg. 3.

## II. FACTUAL BACKGROUND

2.1 On March 1, 2015, Defendant adopted its Policy for Submission of Disputes to Final and Binding Arbitration and Waiver of Jury Trial (the "Agreement").[3]

2.2 On March 11, 2015, Defendant met with Kubala and other employees, and explained the Agreement to them.[4] The Agreement plainly states an employee who "refuse[s] or fail[s] to sign the Acknowledgement and continue[s] to accept employment following the effective date . . . shall still be subject to the terms of the Policy and shall be required to arbitrate pursuant to the Policy."[5]

2.3 Kubala refused to sign the Agreement.[6] Afterwards, Mr. Barfield completed the Agreement for Kubala, stating Kubala refused to sign.[7] All parties agree Kubala was presented with the Agreement and continued his employment, and such employment then was with notice that his continued employment was subject to the terms of the Agreement.[8]

2.4 Unbeknownst to Defendant, Kubala had filed this suit on March 9, 2015. (Doc. 1).

2.5 Defendant however, did not receive actual notice of Kubala's claims until March 25, 2015, at the earliest, when the Summons was received at its corporate address. (Doc. 8).[9]

## III. ARGUMENT

**A. Texas Supreme Court Holds Refusal does not Invalidate Acceptance by Continued Employment.**

---

[3] See **Exhibit A**, Affidavit of Laurie Tipps, **Exhibit B**, Affidavit of Gerald Barfield and **Exhibit A-1 through A-3** and **B-1 through B-2**.
[4] Exh. B, Sec. 2, pg. 1
[5] Exh. A-1, pgs. 4 and 6.
[6] Exh. A-3; Exh. B, Sec. 2, pg. 1.
[7] Exh. B, Sec. 2, pg. 1.
[8] Exh. A, Sec. 4, pg. 1.
[9] Exh. A, Sec. 5, pg. 1.

3.1 The Texas Supreme Court has consistently held an employer may make a "take it or leave it" offer to its at-will employees, which changes the terms of the employment relationship. *In re Halliburton, Co.*, 80 S.W.3d 566, 572 (Tex. 2002), *cert. denied*, 537 U.S. 1112, 120 S.Ct. 901, 154 L.Ed.2d 785 (2003). "[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law." *Hathaway v. General Mills, Inc.,* 711 S.W.3d 227, 229. The employment relationship is modified upon (1) notice of the change; and (2) acceptance of the change. *Id.*

3.2 "Notice is effective if it unequivocally communicates to the employee definite changes in the employment terms." *See In re Dillard Dept. Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (citing *Halliburton*, 80 S.W.3d 568). All parties agree Kubala refused to sign the Agreement.[10] Kubala argues that "Kubala's express refusal to sign the New Policy established no contract to arbitrate was ever formed between Supreme and Kubala." Plainly, Kubala admits he received the Agreement and further does not dispute any of Defendant's description of its meetings with employees on the Agreement.[11] Accordingly, Defendant has established it "unequivocally communicate[d]" to Kubala that his employment relationship with Defendant was changing by the enactment of the Agreement. *See id.* ("The record establishes that . . . Dillard presented its arbitration policy to employees at a mandatory meeting held inside the store before it opened for business that day.").

---

[10] Exh. B, Sec. 2, pg. 1; Doc. 16, p. 4 ("Kubala's express refusal to sign . . .").
[11] The meetings are described in further detail in Exhibit B.

3.3	As previously addressed in the Motion to Dismiss, the Agreement warns the employee in two separate places that by continuing his employment, *even if the employee has refused or failed to sign the Agreement*, the employee will be subject to the Agreement and shall be required to arbitrate pursuant to the Policy.[12] Kubala had notice, not only of the existence of the Agreement, but also of the fact his option was either to accept the change or to quit. *See Halliburton*, 80 S.W.3d at 572 (framing the employee's choice as a "take it or leave it" option); *Hathaway*, 711 S.W.3d at 229 (" . . . the employee must accept the new terms or quit").

3.4	Kubala's sole attack on the validity of the agreement focuses on "acceptance" of the change. Relying on *Equity Residential Properties v. Silvers*,[13] a 17-year-old, unpublished opinion out of the Dallas Court of Appeals as his only authority,[14] Kubala argues that an at-will employee's rejection of an arbitration agreement results in there being no meeting of the minds. *Equity Residential* predates all of the significant decisions of the Supreme Court of the United States, the Fifth Circuit, and the Texas Supreme Court, which are now well-settled law relating to the enforceability of arbitration agreements. However, a brief examination of the Texas Supreme Court's *Dillard* opinion in 2006 reaffirms that Kubala, as an employee who has notice of the changes and continues to work—even if expressly refusing to accept the change—is deemed to have accepted the change as a matter of law.

---

[12] Exh. A-1, pgs. 4 and 6.
[13] 1998 WL 549289 (Tex.App. August 31, 1998). This opinion expressly notes that it is "NOT DESIGNATED FOR PULBICATION. UNDER TX R RAP RULE 47.7, UNPUBLISHED OPINIONS HAVE NO PRECEDENTIAL VALUE BUY MAY BE CITED WITH THE NOTATION "(not designated for publication)", which Kubala has failed to note for the Court.
[14] Kubala cites *Equity Residential Props. Mgmt. Corp. v. Silvers*, No. 05-97-01073-CV, 1998 WL 549289 (Tex. App.—Dallas Aug. 31, 1998, no pet.) (not designated for publication).

3.5     *Dillard* is directly on point with the facts in the Kubala case. In *Dillard*, the employer enacted an arbitration policy in August 2000 and held a mandatory meeting to explain the policy to its employees. *Dillard*, 198 S.W.3d at 780. The employees received documents regarding the policy and an acknowledgement, which also briefly explained the arbitration policy, and warned that employees were deemed to accept the policy by continuing their employment. *Id.* Garcia continued her employment until 2002. *Id.* When she filed suit, Dillard compelled arbitration. *Id.* In resisting the motion to compel, Garcia asserted she had "refused to sign the agreement because [she] did not agree to be bound by terms of the agreement." *Id.* at 780–81. Like Kubala, Garcia did not dispute her employer's description of the meeting to explain the arbitration or having received a copy of the acknowledgement. *Id.* Despite her assertion of an express refusal to agree, the Supreme Court reversed and remanded the case and ordered the parties be compelled to arbitrate. *Id.* at 782.

3.6     The *Dillard* case is factually on point and supports that Kubala, in fact, accepted the terms of the Agreement by continuing to work. In contrast, the *Equity Residential* opinion is distinguishable. In *Equity*, the employee refused to sign and was then told she might be grandfathered in. *See Equity Residential Props. Mgmt. Corp. v. Silvers*, No. 05-97-01073-CV, 1998 WL 549289, at *4 (Tex. App.—Dallas Aug. 31, 1998, no pet.) (not designated for publication). The *Equity* case falls into an exception that exists, but which is not present here: if the written notice is contradicted by other written or oral communications between the employer and the employee, the notice may not be unequivocal and continuing to work would not necessarily constitute acceptance. *Halliburton*, 80 S.W.3d at 569 (citing *Hathaway*, 711 S.W.2d at 229). Kubala, who bears

the burden of resisting enforcement of the Agreement, has not shown any evidence of contradictory written or oral communications between Defendant and Kubala. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002) (stating the party resisting arbitration bears the burden). Accordingly, the notice to Kubala was unequivocal, stating clearly:

> By my signature below, I acknowledge, understand, and agree that I am required to adhere to the Policy if I wish to remain employed by the Company and that even if I refuse or fail to sign this Acknowledgment that my acceptance of employment, or continued employment, after the effective date, shall constitute my acceptance of this Policy and the requirements to arbitrate included in this Policy.[15]

*See Halliburton*, 80 S.W.3d at 569 ("This is not a case in which the written notice was contradicted . . . we conclude that Halliburton's offer was unequivocal and Myers' conduct was an acceptance).

3.7 Simply put, once "the employer proves that he has unequivocally notified the employee of the changes, the employee's continued employment will constitute acceptance as a matter of law." *Hathaway*, 711 S.W.2d at 229. Here, the record establishes the notice was unequivocal and that Kubala accepted the Agreement by maintaining his employment.

3.8 Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *See Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 447 (S.D. Tex. 2012); *Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 993 (S.D. Tex. 2011) (Judge Janis Graham Jack quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

---

[15] Doc. 11-1, pg. 8, ¶ 4; see also, pg. 6, ¶¶ 1 and 4.

213, 218 (1985) ("The FAA 'leaves no place for the exercise of discretion by a district court . . . agreements to arbitrate must be enforced, absent a revocation of the contractual agreement.'")).

## B. Enforceability is the Question for the Arbitrator.

3.9 Under the terms of the Agreement, Kubala and Defendant have agreed that any dispute about its validity, enforceability or scope is to be arbitrated.[16] The Agreement states:

> The arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute.[17]

When "clear and unmistakable evidence" exists that the parties intended for an arbitrator to decide "gateway matters," the United States Supreme Court holds that courts must defer such matters to the arbitrator for determination. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777–78 (2010) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) (arbitrability issue is for arbitrator if parties so agree by "clear and unmistakable" evidence)). Therefore, Kubala's argument that his claims are outside the scope of the Agreement because he alleges Defendant may have had actual notice of his claims is not for the Court, but for the arbitrator to decide.

3.10 While Kubala's unsubstantiated allegations do not create an issue within the purview of the Court, Defendant takes issue with Kubala's bald allegations that Defendant improperly and "instantaneously" enacted its Agreement in response to Kubala's suit or in an effort to curtail the rights of a putative class. Without directly

---

[16] Exh. A-1, Agreement, Sec. II, p. 3.
[17] Exh. A-1, Agreement, Sec. II, p. 3.

saying it, and without citing a legal premise for the position, Kubala essentially asserts Defendant did not have the legal right to enter into an arbitration agreement with its employees. Such an insinuation is completely unfounded. The Agreement was effective *a full eight (8) days* before Kubala filed suit.[18] Moreover, Defendant's Agreement took planning and drafting, meaning it was in process for a period of time before Kubala's filing suit. Kubala is the only employee who refused to sign. Finally, Defendant denies Plaintiff has shown any basis for asserting Defendant had notice of Kubala's lawsuit before service of the summons arrived on March 25, 2015 at the corporate address. (Doc. 8). However, actual knowledge of the suit did not occur until March 27, 2015 when Defendant actually received the summons from the current occupant at the corporate address. Kubala has not asserted that he made a complaint to or made known to Defendant that he had filed suit before the effective date of the Agreement. Therefore, Kubala's claims are within the scope of the Agreement. If Kubala had evidence to the fact that Defendant had actual knowledge sooner, now was the time for Kubala to present such evidence to the Court. He has not done so and should not be granted leave of Court to delay referral to the arbitrator. Kubala has not met his burden of proof.

3.11 Kubala's request for discovery on the issue of knowledge should also be denied. Discovery on the issue of notice is not necessary or appropriate and does not serve the purposes of the Federal Arbitration Act in promoting efficiency. *Kulpa v. OM Fin. Life Ins. Co.*, No. CIVA107CV1136HSO-RHW, 2008 WL 351689, at *1 (S.D. Miss. Feb. 6, 2008) (citing *Bank One, N.A. v. Coates*, 125 F.Supp.2d 819, 829 (S.D. Miss. 2001) (prohibiting defendant from conducting discovery before the court ruled on the motion to

---

[18] Exh. A, Sec. 2, pg. 1.

compel arbitration without compelling justification for discovery) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983))).

3.12  Having already shown Kubala received unequivocal notice of the Agreement which specifically stated that "continued employment, after the effective date, shall constitute my acceptance," as a matter of law, Kubala accepted its terms by continuing his employment, there is nothing left for the Court to do except compel arbitration.

## IV. CONCLUSION

4.1  Kubala may still submit any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of the Agreement to the arbitrator for determination. However, under established Fifth Circuit law, Kubala must arbitrate his claims against Defendant and the Court must dismiss Kubala's lawsuit for lack of subject matter jurisdiction, or in the alternative, stay the proceedings as to Kubala pending an arbitral award or motion to dismiss.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Defendant **SUPREME PRODUCTION SERVICES, INC.**, respectfully prays that the Court order that the collective action claim asserted by **Plaintiff, Ted L. Kubala,** be dismissed for lack of subject matter jurisdiction so that Kubala's claims may be arbitrated in accordance with the terms of Supreme's Policy for Submission of Disputes to Final and Binding Arbitration and Waiver of Jury Trial, and for all other relief that the Court deems warranted in law and equity.

Respectfully submitted,

*/s/ Tonya Beane Webber*
Tonya Beane Webber

So. Dist. I.D. No. 6145
Texas Bar No. 21042300
Email: twebber@prdg.com
(361) 880-5824 – Direct line
(361) 880-5844 – Telefax

**ATTORNEY IN CHARGE FOR
SUPREME PRODUCTION SERVICES, INC.**

**OF COUNSEL:**

Lisa Alcantar
So. Dist. I.D. No: 1093319
Texas Bar No.: 24069824
Email:  lalcantar@prdg.com
(210) 547-9325 - Direct Line
(210) 736-1992 – Telefax

**PORTER, ROGERS, DAHLMAN & GORDON, P.C.**
One Shoreline Plaza (Tonya Webber's Office)
800 N. Shoreline Blvd., Suite 800
Corpus Christi, Texas  78401
Telephone:   (361) 880-5808
Telefax:        (361) 880-5844
Trinity Plaza II (Lisa Alcantar's Office)
745 E. Mulberry Ave., Suite 450
San Antonio, Texas 78212
Telephone:   (210) 736-3900
Telefax:         (210) 736-1992

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing instrument has been served via the Court's ECF System to counsel listed below in accordance with the Federal Rules of Civil Procedure.

Michael A. Josephson – mjosephson@fibichlaw.com
Andrew W. Dunlap – adunlap@fibishlaw.com
Lindsay R. Itkin – litkin@fibichlaw.com
**FIBICH, LEEBRON, COPELAND, BRIGGS & JOSEPHSON**

AND

Richard J. Burch – rburch@brucknerburch.com
**BRUCKNER BURCH PLLC**

                                                                                  /s/ *Tonya Beane Webber*